# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PERCY ALLEN WILLIAMS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV615 |
| | ) | |
| LEWIS O. SMITH, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a prisoner of the State of North Carolina, has filed a civil rights complaint along with an application to proceed *in forma pauperis*. This Complaint follows a previous Complaint filed in this Court in case 1:10CV501. There, Plaintiff sued Lewis O. Smith, along with two judges and two attorneys. The undersigned concluded that the causes of actions against the defendants other than Smith were improper. Even as to Smith, some causes of action were not viable. However, as to other causes of action against Smith, Plaintiff had failed to state a proper claim, but there was the chance that he could state a claim for relief in the future. Therefore, a Memorandum Opinion, Order, and Recommendation was entered which recommended that the prior action be dismissed without prejudice to Plaintiff filing a new complaint correctly stating his potentially proper claims.

The current Complaint is Plaintiff's response to the prior Memorandum Opinion, Order, and Recommendation. In it, Plaintiff attempts to remedy the problems of his prior

case. He also seeks to add new defendants and, possibly, new causes of action. His efforts have produced mixed results.

Plaintiff first makes a general statement that he is filing the Complaint under the Federal Tort Claims Act, Americans with Disabilities Act ("the ADA"), the Rehabilitation Act of 1973, and the Eighth and Fourteenth Amendments to the United States Constitution. He adds that he "simultaneously alleges the tort of negligence." (Docket Entry 2, Additional Pages at 1.) However, in the body of the Complaint, Plaintiff does not set out any facts supporting claims under the Federal Tort Claims Act or claims of negligence. Therefore, the Court does not consider the Complaint to raise these claims and will limit its discussion to claims under the ADA, Rehabilitation Act, and United States Constitution.

The basic facts, as alleged in the Complaint, are as follows. Plaintiff was transferred to Albemarle Correctional Institution on January 12, 2010. (*Id*. § V, ¶ 1.) He was medically screened by a "custodial staff member." (*Id*. ¶ 2.) Plaintiff informed her that he was a "disabled American veteran" with "petella [sic] femoral syndrome" in both knees. (*Id*.) He was initially placed in a bottom bunk, but was then assigned to a top bunk on January 14, 2010. (*Id*. ¶ 3.) Plaintiff protested and began filling out sick-call forms, apparently in an attempt to receive a medical evaluation and an assignment to a bottom bunk. (*Id*. ¶ 4.) He claims that he was not seen by a doctor until after "notifying the Director of Prisons" of his situation. (*Id*. ¶ 5.) Plaintiff was seen by Dr. Sami Hassan, "who despite [Plaintiff's] pre-existing condition and follow-up appoint [sic] from a previous institution charged [him] an additional co-pay fee" and left him "assigned to a top bunk against [his] will." (*Id*.) He

claims that the bunk assignment places him "in imminent danger of serious physical injury" and causes him to "suffer excruciating pain daily." (*Id*.) Plaintiff states that he filed a grievance concerning "inadequate healthcare." (*Id*. § III(B)(2).) He appealed the denial of his grievance, which resulted in the denial being upheld by the Inmate Grievance Resolution Board on May 25, 2010. (*Id*. § III(B)(3).) Based on the facts just set out, as well as other facts scattered throughout the Complaint, Plaintiff has brought claims against Facility Administrator Lewis O. Smith, Facility Physician Dr. Sami Hassan, Director of Prisons Robert C. Lewis, Executive Director of the Inmate Grievance Resolution Board Finesse G. Couch, and Chairman of the Inmate Grievance Resolution Board Rev. Reginald E. Midgette, Sr. He states at the top of his Complaint form that all Defendants are being sued in their official and individual capacities.

Turning first to Plaintiff's claims under the Rehabilitation Act and the ADA, these claims are similar to claims raised against Smith in the prior case. As was explained to Plaintiff in the prior case, he may be able to raise claims under the Rehabilitation Act and ADA. However, those Acts "do not provide any cause of action for a plaintiff to sue an individual defendant, such as Defendant Smith, in his individual capacity." *Williams v. Smith*, Case No. 1:10CV501, 2010 WL 2816714, at *2 (M.D.N.C. July 15, 2010) (memorandum opinion, order, and recommendation of dismissal without prejudice) (citing *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999); *Smith v. Potter*, No. 1:09CV587, 2010 WL 1500876 (M.D.N.C. Apr. 14, 2010) (unpublished); *Swaim v. Westchester Academy, Inc.*, 170 F. Supp. 2d 580, 583 (M.D.N.C. 2001)). Therefore, Plaintiff

can only raise official capacity claims under these Acts and those claims will be treated as "claims against the state agency that employs" Defendants, likely the North Carolina Department of Correction (NCDOC). *Id*. (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).)

There were also other problems with Plaintiff's Rehabilitation Act and ADA claims in his prior case. First, he did not allege that the agency employing Smith received federal funds so that liability attached under the Rehabilitation Act. Plaintiff has now made this allegation. He states that the agency that apparently employees all of the Defendants, the NCDOC, receives federal funds for purposes of the Rehabilitation Act. (Docket Entry 2, Additional Pages, ¶ 4.) Second, Plaintiff previously did not make clear whether the conduct alleged to violate the ADA was co-extensive with, or totally or partially separate from, the conduct alleged to violate the Equal Protection Clause of the Fourteenth Amendment. *Williams*, 2010 WL 2816714, at *3. Plaintiff's present Complaint is no model of clarity on this point, but the Court will construe Plaintiff to have alleged co-extensive claims at this time. Plaintiff's Rehabilitation Act and ADA claims, thus, can go forward, but only as to the state agency employing Defendants.

Plaintiff's remaining claims are for violations of his rights under the Eighth and Fourteenth Amendments. Such claims must necessarily be brought under 42 U.S.C. § 1983.[1]

---

[1] In the prior case, the Court stated that it was not clear whether Plaintiff intended to use the alleged ADA and Rehabilitation Act violations as a basis for liability under § 1983. It also noted that there was divergent authority in the courts as to whether this was even possible. *Williams*, 2010 WL 2816714, at *4 n.3. The present Complaint is also not one hundred percent clear on this point,
(continued...)

Further, because Defendants are state employees, the claims can only be brought against them in their individual capacities. *See Will*, 491 U.S. at 71. As noted in the prior Memorandum Opinion, Order, and Recommendation, "'[c]laims that prison officials failed to provide adequate medical care . . . sound in the Eighth Amendment . . . [and thus] there is a subjective and an objective component to showing a violation of the right. The plaintiff must demonstrate that the [officials] acted with "deliberate indifference" (subjective) to the inmate's "serious medical needs" (objective).'" *Williams*, 2010 WL 2816714, at *3 (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)).

Plaintiff has most clearly stated a claim against Dr. Hassan. He alleges that he had a serious medical need (disabling knee pain), that he was treated by Hassan only after numerous requests, that Hassan inadequately examined him, that Hassan did not provide him with adequate treatment, and that Hassan did not change his bunk assignment. (Docket Entry 2, Additional Pages, ¶ 10.) This left him to suffer "excruciating" pain on a daily basis. (*Id*. § V, ¶ 5.) These allegations are sufficient for the claim against Hassan to go forward.

Naturally, they would also be sufficient to proceed against any of the other Defendants, but only if Plaintiff can demonstrate that they were sufficiently responsible for the alleged unconstitutional actions. Defendants Smith and Lewis are supervisors of Dr. Hassan. However, as Plaintiff has already been told, this alone is not a sufficient basis for

---

[1](...continued)
but Plaintiff does not appear to be making such a claim. Rather than create a cause of action that does not seem to be present and that would be legally questionable in any event, the Court will treat the current Complaint as not raising this theory of liability.

liability under § 1983. *Williams*, 2010 WL 2816714, at *5. Still, the Complaint does contain some allegations beyond mere supervisory liability. It alleges that Smith, as prison administrator, has wide powers and employs a variety of methods, from officers and cameras to inmate informants to track everything that happens in the prison. (Docket No. 2, Additional Pages, ¶ 12.) As for Defendant Lewis, the Complaint makes a similar, but weaker allegation that it is his job, as Director of Prisons, to be aware of the way all of the prisons operate. That circumstance alone would likely not suffice, but Plaintiff also alleges that he specifically complained of his situation to Lewis. Plaintiff also adds that numerous complaints have been filed regarding Hassan's treatment of inmates. (*Id*. ¶ 13.) Overall, these allegations are not strong and Plaintiff may well have to better support his claims of knowledge as to Smith and Lewis if they are to withstand a dispositive motion from Defendants. However, they are sufficient to have the claims proceed beyond initial screening.

As for the remaining defendants, Couch and Midgette, their only role in events appears to have been as administrators of the Inmate Grievance Resolution Board which denied Plaintiff's appeal of the denial of the grievance he filed at the Albemarle Correctional Institution complaining of "inadequate healthcare." Plaintiff asserts that the Resolution Board is employed to deny grievances with the purpose of "keeping liabilities down and to keep front and the face pretty [sic]." (Docket Entry 2, Additional Pages, ¶ 14.) He alleges that the Board did not thoroughly examine or investigate the matter, but simply denied his

appeal and encouraged him to continue to use the sick-call process to address his medical needs. (*Id.*)

Plaintiff makes no allegation that Couch and Midgette were actually aware of his situation or took any personal actions in his case. Therefore, they are not associated with Plaintiff's Eighth Amendment claim other than, perhaps through supervisory liability. As stated above, Plaintiff cannot base a claim on supervisory liability. Plaintiff has put forth no viable claim against Couch or Midgette under the Eighth Amendment.

Finally, Plaintiff attempts to raise due process and equal protection claims under the Fourteenth Amendment of the United States Constitution. Regarding Plaintiff's bunk assignment and related matters, the Court noted in Plaintiff's prior case that "it is not readily apparent how Plaintiff's bunk assignment potentially implicated the Due Process Clause." *Williams*, 2010 WL 2816714, at *4. Plaintiff does attempt to explain his due process claim by noting that due process generally is "a course of legal proceedings accoding [sic] to those rules and principles which have been established in our system of jurisprudence, for the enforcement and protection of private rights." (Docket No. 2, Additional Pages, ¶ 11.) He adds that due process is violated if "any question of fact or liability be conclusively presumed against him." (*Id.*) He then states that he did not receive due process when Dr. Hassan told him there was nothing wrong with his knees and that he did not need a bottom bunk. (*Id.*) Although Plaintiff's description of the concept of due process may be generally accurate, his ultimate conclusion is not. His medical examination and treatment was not a form of legal or quasi-legal process where Plaintiff would have a right to due process. To find otherwise

would inflate every prison decision to the level of one requiring certain procedures. Plaintiff has not stated a due process claim based on his medical treatment or bunk assignment.

Plaintiff's other potential due process claim relates to his allegation that Defendants Couch and Midgette run the Resolution Board in such a way that it does not perform a meaningful review of prisoner grievances generally and that it did not carry out a meaningful review of Plaintiff's grievance specifically. Plaintiff still does not state a due process claim with these allegations. There is no substantive due process right to a prison grievance procedure. *Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008) (no substantive right to a grievance procedure); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (no right to any grievance procedure or to access any procedure voluntarily created by the State). Further, to any extent that a procedural due process right attaches to a prison grievance system, it exists only to ensure the right of access to the courts. *Adams*, *supra*. Plaintiff does not allege that his ability to bring his case in this Court was in any way impaired by the procedures employed by the Resolution Board. In fact, he has brought his case here and will have his chance to proceed with any viable claims it contains. Plaintiff has not stated any due process claim.

Finally, Plaintiff alleges that his right to equal protection was violated through his bunk assignment. As Plaintiff was told in the prior case, to state such a claim he would need to allege that he was given a "top bunk assignment for the purpose of discriminating against [him] based on his disability and/or without any rational basis." *Williams*, 2010 WL 2816714, at *4. Plaintiff's equal protection allegations are rather scrambled, but it appears

that Plaintiff is attempting to allege both bases for his claim. He states at one point that he believes he would not have received a top bunk assignment if he were not a disabled veteran. He also alleges that other inmates with knee problems who are not disabled, as well as some able-bodied inmates, receive bottom bunk assignments. He concludes that there is no reason, other than discrimination, why he was not assigned a bottom bunk. (Docket Entry 2, Additional Pages ¶ 11.) His overall argument also appears to indicate that no rational reason existed for his bunk assignment.

Although the question is a close one, the Court concludes that the Complaint is sufficient to state an equal protection claim against Smith, Hassan, and Lewis, the three defendants who are alleged to have been in some way connected to Plaintiff's medical treatment and bunk assignment. Plaintiff makes no allegation that he was treated differently from other inmates during the grievance process. Therefore, he has not stated any equal protection claim against Couch or Midgette.

In summary, Plaintiff has properly stated, for screening purposes only[2], (1) claims under the ADA and Rehabilitation Act against the state agency employing Defendants, (2) Eighth Amendment/§ 1983 claims against Lewis, Hassan, and Smith, and (3) Fourteenth Amendment equal protection/§ 1983 claims against Lewis, Hassan, and Smith. He has not sufficiently alleged any other claims that he attempts to raise. This leaves the Court with two

---

[2]This is not to say that Plaintiff will eventually prevail on his claims or even that they will survive a dispositive motion by Defendants. A number of his claims are weak and/or only meet the barest of pleading standards to allow them to pass initial screening. He will likely have to bolster and defend them at a later date.

alternatives. It can either allow the case to proceed as to the viable claims or dismiss the case and allow Plaintiff another attempt at properly setting out all of the claims in his Complaint. After considering the matter, the Court concludes that the best course of action is to allow Plaintiff, as the master of his Complaint, to make that election. Therefore, this matter will be stayed for twenty days to allow Plaintiff to make that decision and to inform the Court of his preferred course of action. If Plaintiff does not file any response within the twenty days allowed, the case will continue as to the proper claims only.

One final matter remains. Plaintiff has asked to proceed *in forma pauperis*. In reliance upon the representations set forth in the request, the Court finds that Plaintiff had deposits of $270.00 in his inmate account in the last six months and, therefore, he must make an initial partial payment of the fees in this matter. Plaintiff must also consent to have the remainder of the applicable $350.00 filing fee withdrawn from his prison account under the terms set out below. Naturally, the initial payment and further withdrawals only apply if Plaintiff elects to proceed with this Complaint. If he chooses instead to dismiss this Complaint and to file a new complaint, no payment is due in this case. Also, the time for Plaintiff to submit the partial payment and consent to further collection will not begin until he either elects to proceed or the twenty-day stay expires.

**IT IS THEREFORE ORDERED** that Plaintiff in the above-named action be, and is hereby, permitted to file and prosecute said action in this Court without prepayment of fees or giving security therefor, subject to the conditions set forth below.

**IT IS FURTHER ORDERED** that this matter is filed, but stayed for twenty days. By the end of that twenty-day period, Plaintiff may inform the Court that he wishes to have the case proceed only as to the correctly stated claims listed above or that he wishes to have this case dismissed without prejudice to his filing a new complaint alleging those claims and any others he believes that he can properly allege. Failure to respond within twenty days will be treated as consent to have the case proceed as provided in this Order.

**IT IS FURTHER ORDERED** that, as a condition of Plaintiff's proceeding *in forma pauperis*, Plaintiff shall, within sixty (60) days, submit to the Clerk an initial payment of $9.00 (which represents 20% of the greater of the average monthly deposits into or the balance in Plaintiff's account for the 6-month period immediately preceding filing of this Complaint), and at the same time sign and return the "Consent to Collection of Fees From Trust Account" form, which the Clerk is sending with this Order, unless Plaintiff files notice of his intent to accept a dismissal without prejudice of this action within twenty (20) days of this Order.

**IT IS FURTHER ORDERED** that, if this case does proceed and as a condition of Plaintiff's proceeding *in forma pauperis*, Plaintiff's trust officer shall be directed to pay to the Clerk of this Court 20% of all deposits to his account starting with the month of September, and thereafter until the $350.00 filing fee has been paid. If Plaintiff elects to dismiss this case, no money is due and no withdrawals should be made.

**IT IS FURTHER ORDERED** that if this case proceeds as filed, further proceedings and service of summons are stayed until Plaintiff has either (1) submitted to the Court the

sum(s) noted above along with the "Consent to Collection" form, or (2) in the alternative has submitted the "Consent to Collection" form along with a motion for relief from the stay, and a statement made under penalty of perjury that he has not had access to any funds for payment of the sum(s) noted above for the 60-day period.

**FAILURE TO COMPLY WITH THE FEE AND PAYMENT PORTIONS OF THIS ORDER IN A TIMELY MANNER WILL RESULT IN DISMISSAL OF THIS ACTION WITHOUT FURTHER NOTICE TO PLAINTIFF.**

                                                /s/ L. Patrick Auld
                                                **L. Patrick Auld**
                                                **United States Magistrate Judge**

August 13, 2010

ptf-ct1.frm
Section 1983-2/98

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PERCY ALLEN WILLIAMS, JR.,          )
                                    )
                 Plaintiff,         )
                                    )
            v.                      )        1:10CV615
                                    )
LEWIS O. SMITH, et al.,             )
                                    )
                 Defendants.        )

## CONSENT TO COLLECTION OF FEES FROM TRUST ACCOUNT

I, _____, prison number _____, hereby consent:

1. for the appropriate prison officials to collect or set aside from my account on a continuing basis each month, starting the month after this action was filed, an amount equal to 20% of each month's income or deposits for the payment of filing fees and costs of this action;

2. that collection shall continue even after my case is dismissed or otherwise decided until the full filing fee and any assessed costs are paid;

3. that I may not withdraw or use any part of these 20% monthly set asides except to pay the court;

4. that the court will order the Trust Officer (or similarly designated official ) to forward payments to the Clerk's Office, U.S. District Court, Post Office Box 2708, Greensboro, North Carolina 27402, until such time as the $350.00 filing fee and any assessed costs are paid in full; and

5. that I understand that <u>any violation</u> or noncompliance by me with the terms of this Consent shall result in the dismissal of the above entitled action with prejudice.


Date: _____     Plaintiff's signature: _____